## JOHN S. McCAMPBELL v. MARY J. DURST ET AL.

### No. 1931.

1. **Collateral Attack—Fraud.**—A suit to cancel and annul a deed executed in pursuance of the proceedings of the Probate Court, which are alleged to have been fraudulent and void, is not a collateral attack on such probate proceedings, but a direct effort to vacate the deed, which may be done when fraud has been perpetrated, though the probate orders stand.

2. **Stale Demand.**—The defense of stale demand will not avail in favor of one who sets it up against the claim of title by a former owner when the defendant's right accrues within less than ten years.

3. **Evidence—Fraud—Administrator's Deed.**—When an order of probate confirming an administrator's sale and the deed made in pursuance thereof are attacked for fraud, and suit is brought by the heir to cancel the deed, alleging that the recitation therein which alleged payment of purchase money was false, parol evidence is admissible to contradict the recitations of the deed by showing that no consideration was ever paid.

4. **Void and Voidable.**—When the jurisdiction of a Probate Court over the administration of an estate has once attached, its orders though not strictly in accordance with a directory statute are not void but voidable. If an administrator's report of sale and the order confirming it were procured through fraud, they can not form the basis of a right claimed by the purchaser or his vendee in a suit to cancel the deeds, they having notice of the fraud complained of.

5. **Contract—Condition Precedent.**—An attorney contracted with heirs of one whose estate was being administered that he would render all professional services necessary in litigating the title of the estate to lands, and would pay, compromise. or discharge in some way all debts established against the estate. The contract further provided that he should be entitled to one-half the land of the estate upon its final settlement, distribution, and partition, after payment of all lawful debts, costs, and charges. *Held*, that the payment, compromise, or discharge in some way of all debts established against the estate was a condition precedent to the right of the attorney to receive the one-half set forth in the contract.

6. **Same.**—Under a contract between an attorney and the heirs of an estate the attorney was to have for his services one-half of the land of the estate which might remain after the discharge in some way of all debts against the estate. The debts were never paid. The form of an administrator's sale was gone through with and its confirmation by order of the Probate Court secured, but no money was ever paid by the purchaser for the land sold, one-half of which was deeded to the attorney, on which transaction also no money was paid. In a suit by the heirs to recover the land, *held*, that the attorney who had received a deed without consideration, with full knowledge that his vendor, the pretended purchaser, had paid nothing for the land, held the legal title in trust for the benefit of the heirs.

7. **Fraud in Probate Proceedings.**—The administrator was also an heir, a party to the contract with the attorney, and one of the plaintiffs in a suit to recover the land from the attorney. *Held*, that if such heir, being administrator, did in his representa-

tive capacity consciously participate in the fraud and knew that his report to the Probate Court that the purchase money for the land had been paid was false, he would be without remedy as against his coworker in the fraud or his vendee.

APPEAL from Cameron.     Tried below before Hon. John C. Russell. The  opinion states the case.

*Wells & Hicks* and *Waul & Walker,* for appellant.— 1.   The plaintiffs relied upon their charges of fraud, and yet there are no facts or acts set out in their pleadings, and certainly nothing proved, from which any such inference can be drawn; the use of such terms as "fraud," "fraudulent," "covinous," etc., is dealing in mere conclusions of law and wholly insufficient.    The fact that the defendant was the attorney and counselor of the administrator did not in the absence of other and inculpatory facts render a purchase from the administrator by the attorney in person or through another even voidable, much less void; and so with all the orders and decrees of the Probate Court; each and every order and deed complained of must be void and not voidable merely, else in this, a collateral action and one brought by parties and privies, they can not be attacked; if the fraud was admitted the rule would remain the same in this action.    Kerr on Fraud and Mistake, 365.

Fraud is a conclusion, and it is wholly immaterial and insufficient merely to state such conclusions.    Id., 366; Giddings v. Steele, 28 Texas, 732.

Rule as attorney purchasing, etc.    Erskine v. De la Baum, 3 Texas, 406; Mackey v. Martin, 26 Texas, 57; Giddings v. Steele, 28 Texas, 732.

Orders and decrees of Probate Court can not be attacked collaterally. Lynch v. Baxter, 4 Texas, 431–440; Burdett v. Sillsbee, 15 Texas, 604, 617; Lockhard v. White, 18 Texas, 110; Dancy v. Stribling, 15 Texas, 557; Guilford v. Love, 49 Texas, 715; Brown v. Franklin, 44 Texas, 559; Jansen v. Jacobs, 44 Texas, 577; Dunson v. Payne, 44 Texas, 542; Murchison v. White, 54 Texas, 78; Fleming v. Seeligson, 57 Texas, 524; Bradley v. Love, 60 Texas, 475; Rutherford v. Stamper, 60 Texas, 450; Heath v. Layne, 62 Texas, 686; Mikeska v. Blum, 63 Texas, 44; Voorhees v. U. S. Bank, 10 Pet., 474; Wells' Res. Adj., secs. 5, 6, 7, 9, 12.

For non-payment of purchase money.    Heath v. Layne, *supra.*

For collateral attack by parties and privies for fraud.    Murchison v. White, *supra.*

2.    The Probate Court is a court of general jurisdiction, and all of its orders and decrees are entitled to the same presumptions in favor of their validity as those of any other court of general jurisdiction.    Its judgments, orders, and decrees can only be set aside by some direct proceeding having that end in view.    Parties and privies can not make collateral attack for fraud.    Rutherford v. Stamper, 60 Texas, 447; Bradley v. Love, Id,, 475; Kleinecke v. Woodward, 42 Texas, 311; Murchison v. White, 54 Texas, 78; Fleming v. Seeligson, 57 Texas, 524; Heath v.

Layne, 62 Texas, 686; Mikeska v. Blum, 63 Texas, 44; Hollister v. Abbott, 11 Foster, 448; Voorhees v. U. S. Bank, 10 Pet., 474; Wells' Res Adjudicata, secs. 5, 6, 7, 9, 12.

3. The law vests in courts of probate a larger discretion than in any other tribunal, and our Supreme Courts throughout the land so hold and construe all provisions of law like the one in question (requiring sales in lots of ten to forty acres) as merely directory and not at all mandatory, and allow the courts of probate in the exercise of a sound discretion to disregard them; and from the construction of these courts and the matters committed to their charge this rule is a matter of necessity and its wise and salutary effect illustrated almost daily.

And if error (which we do not at all concede) it was a mere irregularity and cured by the approval of the sale by the court; this being a collateral action the question can not be raised here. Edwards v. James, 13 Texas, 52; Brown v. Christie, 27 Texas, 75; Alexander v. Maverick, 18 Texas, 179; Pasch. Dig., arts. 1304, 1305, 1322, 1371; Laws of 1870, sec. 172 (probate); Fisk v. Varnell, 39 Texas, 73; Brown v. Cook, 45 Texas, 73; Grignon's Lessees v. Astor, 3 How., 319; Florentine v. Barton, 2 Wall., 216.

Constitutional provisions are subject to the same construction as statutory provisions.

"There is generally a striking analogy and entire harmony between the rules of interpretation of constitutions and those of statutes," etc. Potter's Dwarris' Statutes, p. 654; Id., p. 231, note 28; Id., pp. 222, 223, note 29.

"I may here notice that this same principle has been applied to constitutions." Sedgw. Const and Stat. Law, pp. 368, 377, and note; Supervisors v. Heenan, 2 Minn , 330; Willitts v. Ridgeway, 9 Ind., 369; People v. Sup. Chenango, 8 N. Y., 317; Hill v. Boyland, 40 Miss., 618, 626, 627; Lehman v. McBride, 15 Ohio St., 573; Cunningham v. Cassiday, 17 N. Y., 276; Smith v. Randall, 6 Cal., 47; People v. Admire, 39 Ill., 251; Woods v. Moncell, 1 Johns Ch., 502; Savage v. Walsh, 26 Ala., 619, 631; People v. Cook, 8 N. Y., 68, 80; In re Empire City Bank, 28 N. Y., 200, 218, 219; People v. Allen, 6 Wend., 487; Jackson v. Young, 5 Cow., 269; Wood v. Chaffin, 13 N. Y., 509; Ex Parte Heath, 3 Hill, 42, 46, 47; Stewart v. Slater, 6 Duer., N. Y., 84, 102.

4. The report of sale, confirmation of sale, final account of the administrator *de bonis non*, his deed to Richard Jordan, and from Richard Jordan to defendant, were each and all valid and necessary links in the chain of title, and together vested perfect title in defendant to the land in controversy, and were admissible in defense of plaintiffs' action and to establish the affirmative relief prayed by defendant. Lynch v. Baxter, 4 Texas, 443–446; Howard v. Bennett, 13 Texas, 309; Klienecke v. Woodward, *supra;* Guilford v. Love, *supra;* Rippetoe v. Dwyer, 49 Texas, 498;

Debrell v. Ponton, 27 Texas, 623; Lockhart v. White, 18 Texas, 102; Dancy v Stribling, 15 Texas, 557; Burdett v. Sillsbee, 15 Texas, 604, 617.

5. The proceedings of a Probate Court can not be declared void in a collateral attack; irregularities can only be revised by a direct proceeding having that end in view.

A deed regular on its face can not be declared void by the court in an action for cancellation for alleged fraud. Such issue is for the jury to determine under proper instructions. Klienecke v. Woodward, 42 Texas, 311; Murchison v. White, 54 Texas, 78; Fleming v. Seeligson, 57 Texas, 524; Heath v. Layne, 62 Texas, 686, and others cited, *ante;* Cobb v. Beall, 1 Texas, 347; Bryant v. Kelton, 1 Texas, 432; Crozier v. Kirker, 4 Texas, 252; Gay v. McGuffin, 9 Texas, 502; Hall v. Layton, 10 Texas, 61; Earle v. Thomas, 14 Texas, 583; Andrews v. Smithwick, 20 Texas, 118; Austin v. Talk, 20 Texas, 168, Thomas v. Ingram, 20 Texas, 728; Drinkard v. Ingram, 21 Texas, 650; Gilkey v. Peeler, 22 Texas, 669; Smithwick v. Andrews, 24 Texas, 488, 495; Rogers v. Broadnax, 24 Texas, 543; San Antonio v. Lane, 32 Texas, 416.

6. The proper construction of the contract evidenced by the two instruments of date April 22, 1870, is that Lovenskiold & McCampbell were employed to settle up the estate of James H. Durst, deceased, to close the administration, and secure the discharge of the administrator according to the law, and nothing more, and they were vested by the conveyance at the time of its execution with a one-half interest in all the property specified in said instruments. Swisher v. Grumbles, 18 Texas, 177; Haldeman v. Chambers, 19 Texas, 39; Dunlap v. Wright, 11 Texas, 597; Nichols v. Stewart, 15 Texas, 232; Perry v. Rice, 10 Texas, 371; Younger v. Welsh, 22 Texas, 417; Hill v. Still, 19 Texas, 84; Browning v. Estes, 11 Texas, 247; York v. Gregg, 9 Texas, 89; Broughton v. Blaylock, 17 Texas, 356; Menard v. Sydner, 29 Texas, 257.

*Bethel Coopwood,* for appellees. — 1. The plaintiffs being in actual possession of the land the void deeds could not be aided by time, and each day they remain of record and cast a cloud upon the title of plaintiffs is a successive cause of action, to which the statute of limitation attached, and the action is in the nature of a continuing nuisance and falls within the rule that a continuance of a nuisance is a fresh nuisance and gives a new cause of action. Smith v. Montes, 11 Texas, 25; Smyth v. Taylor, 34 Texas, 604–607; McConnell v. Kibble, 33 Ill., 175; Witchouse v. Fellows, 10 C. B. (N. S.), 765.

2. The District Court having no power to grant letters of administration in September, 1869, all the proceedings of the court in the progress of the administration it then granted are null and void, and may be shown to be so in any collateral proceedings in which they are relied on to support a claim of right; and in case the administration were rightful, every

order or judgment which the law has not conferred upon the court the power to make or render is a nullity, and may be impeached collaterally by showing from the record itself the want of power in the court to make or render the order or decree in question; and presumptions will not be indulged which are repelled by the record: and fraud vitiates any and all instruments, as well as the judgment of courts, rendering them void. Withers v. Patterson, 27 Texas, 501, 502; McNally v. Haynes, 59 Texas, 583.

3.   Appellant's second amended original answer amounts in law to an admission in favor of plaintiffs that no purchase money was ever paid to the administrator for the land in Cameron County, and that the sale was made to Jordon with an understanding that he was to deed one-half of it to the appellant and the other half to the heirs and representatives, and that the only consideration claimed to have been paid in fact was that appellant caused deed to be made and forwarded to the administrator for half of the tract of land in accordance with an agreement; and such is tantamount to an admission that the sale was never made and that the deed is fraudulent and void.   Judson v. Sierra, 22 Texas, 370; Hamlin v. Warnecke, 31 Texas, 93, 94; Hardy v. De Leon, 5 Texas, 246.

4.   Long delay in taking any proceeding to enforce a contract after the party is entitled to its fulfillment will be a defect to his suit when finally brought, and the defendant taking no steps for more than ten years to enforce the agreement set up should be deemed to have abandoned it, and the ordinary principles which require promptness in the assertion of the right to specific performance apply with peculiar force when no consideration is given.   Wat. on Spec. Per., sec. 477; Preston v. Preston, 5 Otto, 200; McWilliams v. Long, 32 Barb., 194; Pigg v. Corder, 12 Leigh, 69.

ACKER, PRESIDING JUDGE.—James H. Durst died in Nueces County on the 24th day of April, 1858, leaving a will, which was probated in that county on the 3d day of June of that year, and the executors named in the will qualified.   The will directed that after payment of all debts the estate should be equally divided between his widow and three children. Debts to the amount of several thousand dollars were allowed by the executors and established against the estate.

In September or October, 1869, the executors were removed by the County Court of Nueces County, and Mortimer T. Durst, son, and one of the legatees, was appointed administrator *de bonis non* with the will annexed.   On the 22d day of April, 1870, Mortimer T. Durst, as administrator *de bonis non* and as legatee, and Mary J. Durst, for herself as widow and legatee, and as mother and natural guardian for Mary H. Durst and James W. Durst, who were then minor heirs and legatees, executed a power of attorney to Charles Lovinskiold and John S. McCamp-

bell, the appellant, who were then partners in the practice of law, empowering them jointly or severally to take all and every step and to do everything necessary according to their judgment to settlement, to settle up the estate and close up the administration "so as to insure a distribution and partition of the assets of the estate according to the last will and testament, and to obtain the final discharge of the administrator *de bonis non* with the least possible delay, and to assert and enforce our rights or those of any one of us through any of the courts of this State or of the United States, prosecuting or defending as the case may be, and with full power to compromise, arbitrate, and conciliate as to them may seem best; it being understood that the following are supposed to be all the claims against the estate allowed and approved by preceding executor and unpaid. (The list of claims mentioned amounts to about $5000.) And it being further believed that the following embrace all the judgments heretofore rendered by the proper courts in the State against the deceased or his estate and which remain unsettled." (The list of judgments mentioned amounts to about $8500.) The several suits then pending against the estate are named, and the fact stated "that there is said to be a claim against the estate on the part of the United States Treasury amounting to $4782 unpaid. It is understood that the property and assets of said estate are those recited, described, and set forth in the original inventory sworn to by the executors and filed in the Probate Court of Nueces County July 31, 1858; and that for their services our said attorneys in fact shall be entitled to demand, receive, and retain the one-half of all sums of money that may be coming to us, or any one of us, from the said administration and estate whenever collected and receivable by us, as also the one-half of all real estate that may fall to us or be decreed our shares out of said estate upon its final settlement, distribution, and partition after payment of all lawful debts, costs, and charges." The power of attorney recited that it was irrevocable.

Of same date with the power of attorney the administrator and widow executed in the same way another instrument in writing reciting that the four persons named were by the will "constituted the only heirs and legatees of the testator, to share equally all his real and personal property after payment and discharge of all his lawful debts, and we are desirous in every respect to carry out the wishes and intentions of the deceased." The instrument conveys to Lovinskiold & McCampbell one-half of all the assets of the estate, describing them, "after the settlement, discharge, or payment of all claims against the estate which have been allowed and approved, and of all judgments for which said estate is or may become liable, and of all costs, taxes, and expenses to which said estate is or may become subject." The instrument recites that it was executed "in consideration of the professional services rendered and hereafter to be rendered by Lovinskiold & McCampbell, attorneys at law, in settling and

closing according to law the estate and administration of J. H. Durst, enforcing and defending the rights and interests of the heirs and legatees, perfecting and quieting title to all property belonging to the estate and recovering possession thereof, prosecuting all suits at law in favor of the estate that are now pending or which it may be necessary to institute, defending all actions now pending or which may be brought against the same, and generally doing and performing everything requisite and proper in the premises to insure the distribution and partition final of said estate and the final discharge of the administrator with the will annexed." The instrument binds the legatees to " execute, acknowledge, and deliver all and every such further partition, conveyance, release, act, confirmation, or release, and assurance in the law whatever as shall be reasonably demanded and required by said Lovinskiold & McCampbell for the further, better, and more effectual conveying, settling, assigning, and confirming of all and singular the property and rights, privileges, members, and appurtenances unto the said Lovinskiold & McCampbell, their heirs, and assigns."

The administrator, widow, and minor legatees all resided at Austin, in Travis County, and Lovinskiold & McCampbell resided in Nueces County, where the administration was pending. On October 21, 1870, appellant, as attorney in fact for the administrator *de bonis non,* filed an application for an order to sell all of the land belonging to the estate for the purpose of raising money to pay the allowance to the widow and children and debts established against the estate. The allowance had been fixed on application of the widow, filed May 25, 1870. The application was sworn to by appellant as attorney in fact for the administrator, and asked that so much of the land as was necessary to raise sufficient money to pay the allowance be sold for cash and the balance on a credit of six months.

The application was granted and an order of sale regularly entered in due form, under which all of the lands belonging to the estate, about 77,000 acres, were sold on the seventh day of February, 1871, appellant attending and directing the sale as attorney in fact for the administrator, who was not present. The aggregate amount for which all of the lands sold was $3747.31. The land in controversy in this suit, fourteen leagues of La Barreta twenty-five leagues grant, was bid off by one Jordon, who attended the sale for that purpose at the request of appellant.

At the Spring Term, 1871, of the court the administrator made a report of the sales, which appears to have been made by him in person, in which he reports the sale of the land in controversy to Richard Jordon for 1⅛ cents per acre in cash, amounting to $697.84, and that the land had been sold in bulk without subdividing as directed by the order of sale. At the same term of court the report of sales was approved and a decree of confirmation regularly entered in due form, and the adminis--

trator was thereby directed to execute proper conveyances for the lands to the purchasers thereof. In May, 1871, the administrator executed a deed in proper form to Jordon, reciting payment of the purchase money.

On June 15, 1872, appellant and his law partner Lovinskiold filed the final report and application for final discharge of the administrator, which was sworn to by Lovenskiold as agent for the administrator. The exhibit accompanying the final report and application charged the administrator with the $3747.31, proceeds of sales of lands, and charged the estate with costs, expenses, and amounts paid out, including $2462.90 charged as paid to widow on allowance and $500 charged as attorney's fee paid a firm of lawyers for representing the estate in a suit in Goliad County involving the title to a portion of the land belonging to the estate. The debits and credits on the exhibit exactly balanced. The final report and exhibit were approved and an order entered finally discharging the administrator.

In May, 1873, Mortimer T. Durst and appellee Mary J. Durst, executed and delivered the following paper:

"$2115 coin. Received, Austin, Texas, May 23, 1873, from Messrs. Lovinskiold & McCampbell the sum of two thousand one hundred and fifteen coin dollars, which sum upon the delivery to me of the hereinafter specified conveyances in blank by quit claim from Richard Jordan and from Edwin J. Nickerson, of Nueces County, Texas, in full of all demands against Lovinskiold & McCampbell under deed by virtue of a certain contract entered with them April 22, 1870.

"1. Deed to lower half of the Barreta tract in Cameron County for 30,992 acres.

"2. Deed to eastern half of Mariano Lopez de Herrera tract in Nueces County, 7200 acres.

"3. Deed to the lower half Cayetano de la Garza tract in San Patricio County, 553 acres.

"Being for 38,740 acres.

"Mortimer T. Durst,

"As late administrator of estate of James H. Durst, deceased.

"M. J. Durst,

"And for myself and co-heirs and legatees of said James H. Durst."

This instrument was duly acknowledged in June, 1873. The quit claim deeds in blank were delivered, one from Jordon, being for the lower half of the La Barreta tract, and Mortimer T. Durst wrote the name of Mary H. Durst (now Armstrong) in the blank as grantee.

On the 23d of March, 1875, Jordon executed and delivered to appellant a quit claim deed for the upper one-half of the La Barreta grant, reciting the consideration to be $5000 in cash. Lovinskiold died before this deed was executed, and appellant testified that he purchased Lovinskiold's interest before he died.

On February 20, 1878, Mary H. Durst married John B. Armstrong,

and on July 31, 1882, Mortimer T. Durst conveyed his interest in the land in controversy to appellee Mary H. Armstrong.

This suit was brought on the 26th day of October, 1883, by appellee Mary J. Durst (Mary H. Armstrong), joined by her husband John B. Armstrong and James W. Durst as legatees. Armstrong and wife also claimed the interest of Mortimer T. Durst in the land. The petition set out in detail the proceedings in the Probate Court, the deeds executed thereunder, the contract between the administrator and widow of J. H. Durst and Lovinskiold & McCampbell, and every proceeding, transaction, and act as they are specifically hereinbefore set forth, and alleged that every act done by appellant and his partner was done in pursuance of a scheme and with intent to defraud appellees; and averred that the probate proceedings under which the lands were sold were absolutely void, and that the deeds executed in pursuance of the order of sale, report, and confirmation were void.

The prayer of the petition was for delivery and cancellation of the three deeds, that appellant and all persons claiming under him be restrained from setting up any claim or prosecuting any suit on the deeds or any other claim to the land, that all clouds cast upon appellees' title by the deeds or appellant's claim be removed, and that appellees be quieted in their title.

Appellant answered by general and special exceptions, pleaded stale demand, estoppel, acquiescence, limitation, and cross bill to recover the land, setting out his claims of title as follows:

1. By deed from Mortimer T. Durst, the administrator *de bonis non,* to Richard Jordon, and deed from Jordon to him.

2. The power of attorney from appellees to Lovinskiold & McCampbell, and the contract entered into between the administrator and widow and Lovinskiold & McCampbell by which his firm was to have half of the land in payment for services. He pleaded faithful performance of all service incumbent on him and his partner under the contract, and specially pleaded the receipt executed by Mortimer T. Durst and Mary J. Durst, and denied all fraud.

By supplemental petition appellees denied the performance of services by appellant under the contract and power of attorney, and reiterated the charges of fraud. The trial was by jury, and resulted in verdict and judgment in favor of appellees in accordance with their prayer.

It was proved that no part of the debts established against the estate was ever paid, that Jordon never paid any consideration for the lands bid off by him, and that he never received any consideration for the deeds to the land executed by him to appellant and in blank at appellant's request; that the money mentioned in the receipt from Mortimer T. Durst and Mary J. Durst to Lovinskiold & McCampbell was never paid; that appellees have expended over five thousand dollars in perfecting title to

the land in controversy since the order closing the administration was entered, and have paid all taxes on the entire fourteen leagues up to the time of the trial.

The court charged the jury that the report of sale of land made by the administrator and the deeds made thereunder were in contravention of law and void; that the burden of proof was on appellant to sustain his cross action, and in order to entitle him to any relief under his power of attorney and contract he must prove that he has performed the conditions therein expressed to be performed by him; that closing the administration and obtaining the order discharging the administrator without perform-ance of the other parts of the agreement would not be sufficient performance on the part of appellant; that if they found that Lovinskiold & McCampbell carried out the contract and performed the conditions thereof they should find for appellant; that if they found that appellees made the · contract of April 22, 1870, and that under it Mortimer T. Durst delivered the deed in blank to Mary H. Durst and received the same and others through Lovinskiold & McCampbell from Richard Jordon, and appellees knew the same and acquiesced therein for a period of more than ten years be-fore the institution of this suit, then they are estopped from impeaching said contract and you will find for defendant.

The questions raised by the sixty-eight assignments of error that de-mand consideration are the following. It is contended:

1. That the court erred in overruling the special exceptions to ap-pellees' pleadings upon the grounds that they did not state facts, but conclusions, and did not state how, in what, or upon whom the alleged fraud was committed.

2. That the court erred in overruling the special exception upon the ground that this suit is an attempt to vacate the orders, judgments, and decrees of the Probate Court in a collateral proceeding.

3. That the court erred in overruling the special exception upon the ground that plaintiffs' claim was a stale demand and that their right of action, if any they ever had, had been lost by their laches.

4. That the court erred in admitting the testimony of Richard Jor-don over the objection of defendant upon the ground that the testimony was the declarations of a vendor after parting with title against the title, and that the testimony contradicted and impeached the orders and judgments of the Probate Court.

5. That the court erred in admitting the testimony of appellant and Mary J. Durst over the objection of defendant upon the ground that the testimony contradicted and impeached the orders and judgments of the Probate Court.

6. That the court erred in holding the probate proceedings and the deeds executed thereunder void and in excluding them from the jury on objection of plaintiffs.

7. That the court erred in charging the jury that under the contract and power of attorney of April 22, 1870; it devolved upón appellant to settle the debts established against the estate as a condition to his acquiring any interest in the land, and that obtaining the order discharging the administrator was not sufficient to entitle defendant to the land without performing other parts of the contract.

8. That the court erred in refusing to give the special charge number three requested by appellant, to the effect that if they believed the contract between Lovinskiold and appellant and the administrator and widow was tainted with fraud they should return a verdict for defendant.

Without here reciting the averments of appellees' pleadings, it is sufficient to say that we think they were sufficiently full and specific and that the court did not err in overruling the exceptions.

The obvious purpose of this suit was to cancel the deeds which were executed in pursuance of the proceedings in the Probate Court, and to remove from plaintiffs' title the cloud cast thereon by the deeds or any other claim of appellant to the land. These proceedings in the Probate Court and every order and decree relating to the land in controversy are specifically set out in the petition, and it is averred of each and all of them that they are fraudulent and void. These proceedings constitute a part of appellant's claim and eventuated in the deeds, against both of which relief is directly sought by this suit. We think the suit is not collateral, but a direct proceeding to vacate the deeds, which may be done if the facts alleged be true, although the orders in probate stand.

Appellant asserted no right or claim to the land until he received the deed from Jordon, but little more than eight years before this suit was brought. The plea of stale demand was not therefore sustained and the court did not err in so holding.

The witness Richard Jordon testified that he paid no consideration for the deed executed to him for the land, and that he received no consideration for the deed which he executed to appellant. This testimony was not the mere declarations of appellant's vendor, but the proof of facts which were expressly alleged by appellees and which were also proved by the testimony of the appellant himself. This suit was predicated upon theory that the recitations in these deeds and the probate proceedings were false and fraudulent, and it was so specifically alleged in appellees' pleadings as grounds for avoiding them. We think the testimony was admissible and that the court did not err in so holding.

What we have said with reference to the testimony of the witness Jordon applies to the testimony of appellant and the witness Mary J. Durst, which was admitted over the objection of appellant.

The proceedings in the Probate Court were not void and the court erred in so holding and in excluding them from the jury. The application and order for the sale of the lands were regular and complied with the require-

ments of law.    It is true that the report of the sales appears upon its face
not to have been made in comformity to the directions of the order of sale
or to the requirements of the statute then in force, but the court vested
with full jurisdiction in the premises. heard this report and rendered a
decree confirming it.    It has been held that such statutes as that in force
at the time these lands were sold directing how such sales should be made
are merely directory.    The decree of confirmation was entered by a court
of competent jurisdiction in a proceeding entirely regular upon its face,
and was not void, but simply voidable in a suit like this, brought directly
against the parties claiming rights under the probate proceedings with
notice of the facts that render the proceedings voidable.    While we think
the court erred in the ruling now being discussed, we do not think it such
error as requires reversal of the judgment.

We think the court did not err in its construction of the contract en-
tered into between appellant and his partner and the administrator and
widow of James H. Durst.    We think the contract admits of no other
construction than that Lovinskiold & McCampbell were to render all
professional services necessary in litigating the title of the estate to
the lands, and to defry all expense necessary to clearing up and perfecting
the titles to the lands; to pay, compromise, or discharge in some way all
debts established against the estate as conditions precedent to their right
to receive one-half of the assets of the estate. `  It was clearly proven that
these conditions were not performed.    The land having been conveyed
to Jordon without consideration he held the title in trust for the bene-
ficiaries of the estate, and the conveyance having been made to appellant
without consideration and with full knowledge upon his part of the title
his vendor had, he was in no better position than Jordon would have
been as defendant in the action.

The contract entered into between Lovinskiold & McCampbell and the
administrator and widow was probably not illegal.    By its terms the ad-
ministration was to be conducted and the estate settled in conformity
with the requirements of law and the directions of the will.    As to the
two legatees who were minors at the time this contract was made and for
whom their mother, the widow Mary J. Durst, assumed to act, their rights
are in no way affected thereby.    Had the terms of this contract been
complied with and carried out in good faith appellant would have been
entitled to receive one-half of the interests of Mortimer T. Durst and
Mary J. Durst in the assets remaining after discharge of all debts and
costs; but the rights of appellees who were minors and for whom no one
was authorized to act in the execution of the contracts would have re-
mained as if the contract had not been entered into.

We think the court did not err in refusing to give the special charge
number three, because the charge as asked required the jury to return a
verdict against all of the plaintiffs if they believed the contract was

tainted with fraud, when, as we have seen, two of the plaintiffs were not in fact parties to the contract. There was nothing fraudulent in the contract; whatever of fraud there was, was in the acts subsequent to the execution of the contract, and with these none of the appellees appear to have had any connection.

While we think there was no error in refusing the special charge as, asked, we also think it was sufficient to call the court's attention to the question, which should have been submitted to the jury, whether or not Mortimer T. Durst in reporting the sales of the lands to the court knew that the representation that the purchase money had been paid was false, and whether or not in executing the deed to Jordan he did so knowing that it was fraudulent and without consideration. If he was an actual participant in the fraudulent transactions which resulted in the conveyance to appellant he would not be entitled to recover as against his co-worker in the fraud, and whether or not he was such participant is a question of fact to be determined by the jury. If Mortimer T. Durst was so connected with the fraudulent transactions as to defeat his recovery, then appellee Armstrong claiming under him would likewise be defeated.

We deem it unnecessary to discuss the case further.

We are of opinion that the judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted March 26, 1889.