**COMMANDER v. BRYAN et al.**

No. 13796.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 23, 1938.

Rehearing Denied Jan. 27, 1939.

C. H. Milliken and McLeod A. Greathouse, both of Fort Worth, for appellant.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

Mrs. Nannie Graves Laneri, wife of John B. Laneri, died on December 30th, 1918, leaving her last will and testament, embodying the following provisions:

"February 23, 1915.

"It is my will if I should die before my husband that he shall have my interest in our estate to use for his own benefit and for charitable purposes as he may desire as long as he lives.

"It is my wish that he may give to my niece, Mrs. Joe Commander, twenty-five dollars per month to be used for herself and little daughter, Dorris. * * *

"It is my will that Mrs. Commander and daughter, Dorris, continue to receive twenty-five dollars per month from our estate as long as they may live. * * * *

"After my husband's death I will that my home and my interest in our estate be used for the benefit of ambitious boys and girls to prepare them to earn a living. All previous wills are null and void."

The will was duly probated in the county court of Tarrant County on March 6th, 1919. No executor was appointed by the testatrix. John B. Laneri, her surviving husband, was appointed administrator of the estate with the will annexed, and on March 19th, 1919, he qualified by giving and filing the required bond and statutory oath. On April 3rd, 1919, he filed an inventory and appraisement of the estate, showing the value of the assets belonging thereto to be $48,046.33. On April 11th, 1919, Joe Commander applied to the same court for letters of guardianship of the estate of Dorris Commander, his minor child named in the will. The application was granted, and on May 14th, 1919, he qualified as such guardian by filing the required bond and oath. On the same day he filed an inventory and appraisement of the estate of the minor, consisting solely of the $12.50 monthly installments provided for in the will, to continue throughout the life of the minor; said sum being one-half of the $25 bequeathed to the minor and her mother, Mrs. Joe Commander, jointly. As appears from the will, Mrs. Joe Commander was the same person as Ada Belle Commander.

On May 20th, 1919, Joe Commander, as guardian, filed in the county court an application for authority to accept an offer made by John B. Laneri, as administrator of the estate of Mrs. Nannie Graves Laneri, deceased, of sixteen shares of the capital stock in Fakes & Company, a private corporation, engaged in the furniture business, in full settlement and satisfaction of the bequest shown in the will in favor of the minor. On the same day the court made the following order:

"No. 5607. Estate of Dorris Commander, Minor. In the Probate Court of Tarrant County, Texas. May 20, 1919.

"This day came regularly on for hearing application of Joe Commander, guardian of the Estate of said minor, for authority to settle claim for monthly bequest of $12.50 of this Estate against the Estate of Mrs. Nannie Graves Laneri. After hearing the evidence and the law, the court is of the opinion that said application should be granted; that it is for the best interest of this Estate to accept the offer of John B. Laneri to give to this Estate 16 shares of the

capital stock of the corporation known as Fakes & Company, in Ft. Worth, and that it is for the best interest of this estate to accept said stock and to have it all at this time rather than to have the claim for $12.50 per month against the said estate.

"Wherefore, it is considered, adjudged and ordered by this court that the said Joe Commander, guardian, be and he is hereby authorized and empowered to accept said shares of stock in full settlement of any and all claims that this estate has against the estate of said Mrs. Nannie Graves Laneri, and that on receipt of said certificate that all liability existing in favor of this estate against the estate of the said Nannie Graves Laneri be held and considered as extinguished and in all respects paid and released."

The exchange so authorized was duly consummated by transfer and delivery to the guardian of the sixteen shares of capital stock in Fakes & Company, and the execution and delivery by him to said administrator of an instrument in writing by the terms of which the estate of said Mrs. Nannie Graves Laneri, deceased, was released of any liability to said minor for further payments of the bequest in her favor.

On January 14th, 1930, John B. Laneri, as administrator, filed in the county court, in cause No. 5532, same being the docket number of the proceedings in the estate of Nannie Graves Laneri, deceased, a report showing settlement of certain bequests in her will, with a prayer that the court inquire into those transactions and enter order affirming the same. Included in the report was the following:

"This Administrator would further show to the court that he has commuted and settled the annuity provided for in the will to Mrs. Joe Commander and little daughter, Dorris Commander, same being an annuity for life of $25 per month to the two of them; that said settlement as to Dorris Commander was duly authorized in cause No. 5607, on May 19, 1919, which was in the guardianship proceedings, and has therefore made full composition and settlement of the said annuity for Dorris Commander; that he has settled the said annuity with Mrs. Ada Belle Commander by composition with her."

On January 20th, 1930, the court entered an order approving the report, and the order included the following:

"It is further ordered, adjudged and decreed that the settlements made with the guardian of Dorris Commander and the commutation of the annuity settled upon Mrs. Joe Commander be and the same are hereby especially approved as being to the best interest of the estate and also a fair settlement with each and both Dorris Commander and Mrs. Joe Commander."

On July 22nd, 1930, the court approved the final account of John B. Laneri, as such administrator, and ordered the administration closed. That order of the court embodies the following:

"On this 22nd day of July, 1930, came on to be considered in the administration with will annexed of the estate of Mrs. Nannie Graves Laneri, the final account of John B. Laneri, administrator, with the will annexed of said estate; and it appearing to the court that due, proper and legal notice has been given and made in all respects, as required by law of the filing thereof, and the court so finds, after which the court proceeded to examine the said final account and the vouchers accompanying the same and to hear all exceptions and objections thereto and the evidence in support of and against the account, and having fully considered the same, the court finds that all debts, obligations and bequests known to exist against the estate of Mrs. Nannie Graves Laneri have been paid so far as the assets of the said estate in the hands of your administrator, with the will annexed, will permit.

"The court further finding that all property belonging to said estate has been under orders and decrees of this court sold and finally disposed of except the following described property still on hand and in possession of said administrator, towit:"

Then follows a description of certain vendor's lien notes and real estate found to belong to the community estate of the deceased and administrator, and vesting title in the administrator to his one-half thereof, by reason of his community interest, and to the other half, under the terms of the will of the deceased.

On February 14th, 1935, John B. Laneri died, leaving a last will and testament, which was duly probated in the county court of Tarrant County, on March 5th, 1935, and in which Louis Laneri, Mrs. Elizabeth Laneri and Morgan Bryan were named as independent executors, and they

duly qualified to act as such. By that will, $500 was bequeathed to Dorris Commander.

On October 25th, 1935, Dorris Commander, having reached the age of her majority, filed in the District Court of Tarrant County for the 48th Judicial District a petition for a writ of certiorari to bring up for review by that court the orders of the county court authorizing Joe Commander, as guardian of the estate of Dorris Commander, to accept the sixteen shares of stock in Fakes & Company, in full settlement and satisfaction of the annuity bequeathed to his ward by the will of Mrs. Nannie Graves Laneri.

In the petition, those orders of the county court were attacked as void for lack of jurisdiction and power of the county court, in that the exchange in question did not come within any of the classes of investments authorized by statutes in guardianship proceedings. With further allegations that the stock so acquired by the guardian, and eight other shares issued as a bonus thereon, are now worthless.

The writ of certiorari was granted and in due course, after transcript of the proceedings in the county court had been filed, the District Court sustained a general demurrer presented by the executors of the estate of John B. Laneri, deceased, who were made defendants in the proceedings, and dismissed the petition. Plaintiff excepted to that ruling and gave notice of appeal to the Court of Civil Appeals, but never prosecuted an appeal, or writ of error, from that ruling.

This suit was instituted by Dorris Commander and Ada Belle Commander, joined by her husband, Joe Commander, against Louis Laneri, Mrs. Elizabeth Laneri and Morgan Bryan, individually and as independent executors of John B. Laneri, deceased, to recover the annuity of $12.50 per month for each during life. Judgment was rendered denying any relief to both plaintiffs. No appeal has been prosecuted by Mrs. Ada Belle Commander and husband, but Dorris Commander has appealed from the judgment against her.

Since Ada Belle Commander's rights are not involved in this appeal, the pleadings of both plaintiffs will be referred to as those of Dorris Commander only. The proceedings related above were all set out in plaintiffs' petition, except the certiorari proceedings and judgment rendered therein, and were followed by allegations to the effect that the contract made by John B. Laneri, administrator, with Joe Commander, guardian of the estate of the minor, Dorris Commander, for the exchange of the sixteen shares of stock in Fakes & Company for the monthly annuity, and the order of the Probate Court approving the same and authorizing the consummation of it, were all void.

It was alleged that such action was a violation of the plain provisions of the will of Mrs. Nannie Graves Laneri, deceased, which had been duly probated. It was further alleged that since all those proceedings were void, the independent executors of John B. Laneri, deceased, were personally liable to Dorris Commander for the amount of the annuity bequeathed to her, and also liable as independent executors of the estate of John B. Laneri, by reason of the fact that he took over for his own use the proceeds of the annuity so bequeathed to said minor. In that connection, Dorris Commander pleaded a tender into court of the sixteen shares of capital stock received by her guardian in exchange for her annuity, together with eight additional shares later received as stock dividends. There were further allegations that the amount of dividends received by her guardian were unknown to her, but that same, when ascertained by the court, be credited on the sum due her from the defendants, and judgment be rendered in her favor for the balance remaining. The amount sued for by Dorris Commander was for 217 monthly installments of $12.50 each and also for the $500 bequeathed to her by John B. Laneri.

Plaintiff went to trial on her second amended original petition, which was filed June 11th, 1937.

The defendants answered with a plea to the jurisdiction of the court to grant the relief prayed for by plaintiff; also general and special exceptions to the sufficiency of plaintiff's petition, including an exception to the prayer for personal judgment against defendants, or against them in their representative capacity; a general denial by the defendants, both as individuals and as executors; also alleging all the proceedings in the Probate Court, with allegations that the same were not void and therefore not subject to the collateral attack made thereon in this suit. They further pleaded the certiorari proceedings had in the District Court, including the judgment rendered therein and its finality by reason of the failure of plaintiffs to ap-

peal therefrom, all of which was pleaded as a bar to this suit under the doctrine of res adjudicata.

The trial judge filed findings of the proceedings in the county court and also the certiorari proceedings noted, with his conclusions of law that the same were not void, as alleged by plaintiffs, and further that the judgment rendered in the certiorari proceedings was a bar to plaintiff's attack made thereon. There was a further finding that at the trial defendants paid into court for Dorris Commander the $500 bequeathed to her by John B. Laneri, and the same was then and there accepted, which left the only claim involved on this appeal the one for the annuity of $12.50 per month.

It is an elementary doctrine that in order for a court to render a valid personal judgment, it must be vested by law with jurisdiction of the subject matter in controversy and of the person of the defendant. In an action in rem, it must acquire jurisdiction of the res. And it is well settled that probate proceedings in the administration of minors or decedents are proceedings in rem. 11 Tex.Jur., sect. 9, p. 711.

"The County Court shall have the general jurisdiction of a Probate Court; they shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis and common drunkards, grant letters testamentary and of administration, settle accounts of executors, transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis and common drunkards, including the settlement, partition and distribution of estates of deceased persons and to apprentice minors, as provided by law." State Constitution, Art. 5, Sect. 16, Vernon's Ann.St.

"The county court shall have general jurisdiction of a probate court. It shall probate wills, grant letters testamentary or of administration, settle the accounts of executors and administrators, and transact all business appertaining to the estates of deceased persons, including the settlement, partition and distribution of such estates." Art. 3290, R.C.S.

"The district court shall have appellate jurisdiction and general control in probate matters over the county court for the probating of wills, granting letters testamentary or of administration, settling the accounts of executors and administrators and for the transaction of business appertaining to estates, and original jurisdiction and general control over executors and administrators under such regulations as may be prescribed by law." Art. 3291, R.C.S.

"The County Court shall appoint guardians of minors, persons of unsound mind and habitual drunkards, and other persons where it is necessary that a guardian be appointed to receive funds or money due such persons from the Federal Government, settle accounts of guardians, and transact all business appertaining to the estates of minors, persons of unsound mind, habitual drunkards, and other persons for whom a guardian is appointed." Art. 4102, R.C.S., Vernon's Ann.Civ.St. art. 4102.

"The district court shall have appellate jurisdiction over the county court in all matters of guardianship, and original control and jurisdiction over guardians and wards, under such regulations as may be prescribed by law." Art. 4103, R.C.S.

"The provisions, rules and regulations which govern estates of decedents shall apply to and govern such guardianships, whenever the same are applicable and not inconsistent with any provision of this title." Art. 4108, R.C.S.

"When an executor or administrator deems it for the interest of the estate to purchase or exchange property, or to take any claims or property for the use and benefit of the estate in payment of any debt due or owing to the estate, or to compound bad or doubtful debts due or owing the estate, or to make compromises or settlements in relation to property or claims in dispute or litigation, or to compromise or pay in full any secured claim which has been allowed and approved as required by law against the estate by conveying the real estate securing the payment of the claim to the holder thereof in full payment, liquidation and satisfaction of such claim and the cancellation of any and all notes, deeds of trust, mortgages or other liens evidencing or securing the payment of such claim, he shall present an application in writing to the County Court representing the facts; and if the Court is satisfied that it will be to the interest of the estate to grant the same, an order shall be entered showing the authority granted. The executor or administrator may also release mortgages upon payment of the debt secur-

ed thereby." Art. 3430, R.C.S., Vernon's Ann.Civ.St. art. 3430.

"When a will has been probated, its provisions and directions shall be specifically executed, unless annulled or suspended by order of the court probating the same in a proceeding instituted for that purpose by some person interested in the estate. Such proceeding shall be by application in writing, filed with the clerk of the court, setting forth the objectionable provisions and directions in the will, and the grounds of objections." Art. 3433, R.C.S.

"Any person interested in the estate of a decedent or ward may have the proceedings of the county court therein revised and corrected at any time within two years after such proceedings were had, and not afterward. Persons non compos mentis, infants and femes covert shall have two years after the removal of their respective disabilities within which to apply for such revision and correction." Art. 932, R.C.S.

"An application for writ of certiorari to the county court shall be made to the district court, or a judge thereof. It shall state the name and residence of each party adversely interested, and shall distinctly set forth the error in the proceeding sought to be revised." Art. 933, R.C.S.

"The writ of certiorari shall in all cases be granted upon the application of a party therefor upon the applicant entering into bond in such sum as shall be required by the judge, sufficient to secure the costs of the proceeding." Art. 934, R.C.S.

"Whenever a writ of certiorari has been issued, the clerk shall forthwith issue a citation for the party named in the application as being adversely interested in the proceedings sought to be revised." Art. 938, R.C.S.

"The cause shall be tried de novo in the district court, but the issues shall be confined to the grounds of error specified in the application for the writ. The judgment shall be certified to the county court for observance." Art. 939, R.C.S.

"Appeals and writs of error to the supreme court, from the judgments of the district courts in cases of certiorari, shall be allowed and governed by the rules as in other cases." Art. 940, R.C.S.

At the outset it is to be noted that the present suit is a collateral attack not only on the order authorizing the exchange of the annuity in favor of appellant for the shares of stock in Fakes & Company, but also on the order of court denying appellant's petition for certiorari, from which no appeal was prosecuted. Also on the order approving the final account of John B. Laneri, as administrator with the will annexed of the estate of Mrs. Nannie Graves Laneri, deceased, showing express approval of the exchange made by him as such, of 16 shares of stock in Fakes & Company for the annuity bequeathed to Dorris Commander.

In Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325, the court overruled a collateral attack on orders of the county court in administrative proceedings directing and approving a sale of real estate situated in Grayson County, made in Denison rather than in Sherman, the county seat, as required by statute for public sale of land. And in the reasoning advanced to support that conclusion, it was further said that a personal judgment without jurisdiction of defendant acquired by service of citation upon him is logically void, but, by reason of public policy, as against a collateral attack, it will be conclusively presumed that service of citation was had on the defendant, and the judgment will be upheld as valid, leaving the only relief to the defendant a separate suit to set aside the judgment, by direct attack upon it, for lack of service of citation.

That announcement is applicable when the court, after acquiring jurisdiction, acts within the powers delegated to it by the Constitution and statutes creating it. But if the court transcends those powers, its judgment is void and subject to collateral attack, even if it had general jurisdiction over the subject matter. Cline v. Niblo, 117 Tex. 474, 8 S.W.2d 633, 66 A.L.R. 916, and authorities there cited. In that case, the court sustained a collateral attack on orders of the county court in administration proceedings, directing and approving a sale of homestead to satisfy general creditors of the estate, because of the Constitutional exemption of same to satisfy such debts. The probate records did not show that the county court had determined the issue as to whether or not the property was in fact the homestead of the plaintiffs, as surviving members of the family of the decedent. In the absence of such a showing, it was held that such homestead character of the property could be established by proof de hors the record of the administration proceedings, and thus to show the

lack of power in the probate court to order it sold for the purpose stated.

■ Indeed, in Thompson v. Whitman, 18 Wall. 457, 21 L.Ed. 897, and National Exchange Bank of Tiffin v. Wiley, 195 U. S. 257, 25 S.Ct. 70, 49 L.Ed. 184, both cited with approval in Marin v. Augadahl, 247 U.S. 142, 38 S.Ct. 452, 62 L.Ed. 1038–1043, it was held that a judgment may be attacked collaterally as void for lack of jurisdiction of the subject matter or of the person of the defendant, even when the judgment recites findings of jurisdictional facts, such as service of summons upon the defendant. Which is in keeping with the guaranty of due process of law by both the Federal and State Constitutions (U.S. C.A.Const. Amend. 14; Vernon's Ann.St. Const. art. 1, § 19); and also in accord with the general rule that a void judgment is incapable of conferring any rights at any time. Although that announcement is contrary to what was said in Crawford v. McDonald, supra, which has been followed in many subsequent decisions of this state, with respect to a personal judgment which logically is void for lack of jurisdiction acquired over the defendant, but as against a collateral attack is valid until set aside by a direct proceeding. See, also, McDonald v. Mabee, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608, L.R.A.1917F, 458.

But in Cornett v. Williams, Nash v. Williams, 20 Wall. 226, 87 U.S. 226, 22 L.Ed. 254, this was said [page 249]: "The settled rule of law is that jurisdiction having attached in the original case, everything done within the power of that jurisdiction, when collaterally questioned, is to be held conclusive of the rights of the parties, unless impeached for fraud."

Many other decisions of that court are to a like effect, as shown in White v. Crow, 110 U.S. 183, 4 S.Ct. 71, 28 L.Ed. 113, and decisions there cited.

In Simmons v. Arnim, 110 Tex. 309, 220 S.W. 66, this was said [page 68]: "Only an entire want of power to render the judgment could make it void. The question is, therefore, simply whether the court had the power to render such a judgment; not whether, having the power, it rendered an erroneous judgment."

In Schwind v. Goodman, Tex.Com.App., 221 S.W. 579, it was held that an order of the county court authorizing sale by a guardian of real estate belonging to his ward, made in the absence of the required statutory notice given of the filing of the application for such sale, did not render the order of sale void and subject to collateral attack.

Many other decisions might be cited holding that when the county court acquires jurisdiction of the estate of a deceased person in administration proceedings, or of the estate of a minor in guardianship proceedings, its orders affecting substantive rights in the estate, when expressly authorized by the Constitution and Statutes, are not rendered void and subject to collateral attack for failure to comply with certain statutory requirements of a procedural nature, which are only incidental to the statutory powers so conferred.

Following are some of those decisions: Thomas v. Pure Oil Co., Tex.Civ.App., 297 S.W. 776; Stillwell v. Standard Savings Ass'n, Tex.Civ.App., 30 S.W.2d 690; Weems v. Masterson, 80 Tex. 45, 15 S.W. 590; Redmond v. Crowley, 123 Tex. 315, 41 S.W.2d 274, 70 S.W.2d 1113; Schaeffer v. Williams, Tex.Civ.App., 208 S.W. 220; Sloan v. Woods, Tex.Com.App., 25 S.W. 2d 309.

The case of Johnson v. Coit, Tex.Civ. App., 48 S.W.2d 397, is not in point here, because that was a direct attack by certiorari in the District Court on an order in final settlement of administration of an estate that determined controverted claims of title to real estate, which, on appeal to this court, was held void for lack of jurisdiction in the county court to try title to land.

In McNally v. Haynes, 59 Tex. 583, the court overruled a collateral attack on a sale made by the administrator of an estate on the ground that there were outstanding no debts against the estate, and therefore no proper basis for the order of sale. The announcement in the syllabus to that decision is as follows: " * * * In such case the record of which he [purchaser at the sheriff's sale] is charged with notice is the application for the sale, the sale, with accompanying exhibits, if any, and the order of sale; beyond these he is not bound to look."

In Crier v. Cowden, 251 S.W. 822 (by Court of Civil Appeals of El Paso, in which writ of error was refused), in affirming the judgment of the District Court, in a trespass to try title suit, sustaining a collateral attack on an order of the county court in guardianship proceedings authorizing the guardian to exchange their half interest in certain lands situated in Jones and Shackelford Counties for other lands

situated in Crane and Upton Counties, and the deed made thereunder, this was said [page 823]:

"The deed sought to be canceled is void because the application of the guardian, the order of the court, and the approval order, as well as the deed, show that the probate court had not the power to authorize the guardian to exchange the lands of the wards. Therefore the orders were subject to collateral attack. Withers v. Patterson, 27 Tex. 491, 86 Am.Dec. 643; Marks et al. v. Hill, Adm'r, 46 Tex. 345; Trammel et al. v. Philleo, 33 Tex. 395.

"The guardian is nowhere authorized to exchange the lands of the wards by any statute, so the probate court acted in excess of its jurisdiction. Freeman on Judgments, § 119; Crow et al. v. Van Ness et al. (Tex.Civ.App.) 232 S.W. 539.

"The district court had original jurisdiction to try the title or to remove cloud, and the appellees' petition contains all the orders, etc., of the probate court. McCampbell v. Durst et al., 73 Tex. 410, 11 S.W. 380; Id., 15 Tex.Civ.App. 522, 40 S.W. 315; Id., [Durst v. McCampbell], 91 Tex. 147 [40 S.W. 955], 41 S.W. 470."

In St. Paul Sanitarium v. Crim, 38 Tex. Civ.App. 1, 84 S.W. 1114, writ refused, it was held that a sale of property made under orders of the county court in a guardianship proceeding during pendency of a prior guardianship, in which another and different guardian was appointed, was void, because such second guardianship proceedings during the pendency of the first, were beyond the jurisdiction of the probate court; and the fact that the order of sale was regular on its face and did not disclose the pendency of the first guardianship made no difference.

In Harrison v. Barngrover, Tex.Civ. App., 72 S.W.2d 971, writ of error refused, it was held that a mineral lease executed by a guardian under an order of the probate court, purporting to extend beyond the age of minority of the ward, was to that extent void and subject to collateral attack because of a statute expressly denying authority of the probate court to order the making of such a lease to extend beyond the age of minority of the ward.

■ "A void judgment has been termed mere waste paper, an absolute nullity; and all acts performed under it are also nullities. Again, it has been said to be in law no judgment at all, having no force or effect, conferring no rights, and binding nobody. 'It is good nowhere and bad everywhere,' and neither lapse of time nor judicial action can impart validity. It is not susceptible of ratification or confirmation, and its invalidity may not be waived." 25 Tex.Jur., sect. 254, p. 693.

"The only question which remains to be considered is, whether the judgment of the district court was void by reason of the alleged incompetency of the judge presiding at the time of its rendition. If so, it must be conceded, that the judgment of affirmance rendered by this court, could not impart to it validity, but would itself be void by reason of the nullity of the judgment appealed from. Horan v. Wahrenberger, 9 Tex. 313 [58 Am.Dec. 145]. If a void judgment, it may be vacated and its execution enjoined at any time." Chambers v. Hodges, 23 Tex. 104, 105.

In Engleman v. Anderson, Tex.Civ.App., 244 S.W. 650, writ refused, it was held that even an Act of the Legislature cannot vitalize a void judgment.

■ Nor will a void judgment be given effect of res adjudicata in a subsequent suit involving the same subject matter. Ruby v. Davis, Tex.Civ.App., 277 S.W. 430; 2 Black on Judgments, sect. 513, p. 611.

1 Freeman on Judgments (5th Edition), pages 643 and 644, reads as follows:

"A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity, is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification. Nothing can be acquired or lost by it; it neither bestows nor extinguishes any right, and may be successfully assailed whenever it is offered as the foundation for the assertion of any claim or title. * * * The fact that the void judgment has been affirmed on review in an appellate court or an order or judgment renewing or reviving it entered adds nothing to its validity. Such a judgment has been characterized as a dead limb upon the judicial tree, which may be chopped off at any time, capable of bearing no fruit to plaintiff but constituting a constant menace to defendant." See, also, 1 Freeman on Judgments (5th Edition) par. 354, p. 733; par. 372, p. 774, par. 395, p. 846.

■ We have found no statute vesting in the probate court power to order and ap-

prove the exchange by the guardian of the annuity for the shares of stock in Fakes & Company.

 Under such showing, we are unable to distinguish this case in principle from the decision in Crier v. Cowden, supra, which seems to have been approved by our Supreme Court, by its denial of writ of error. Nor do we believe there is merit in appellees' contention that the annuity was a debt owing to the minor and that the order directing the exchange in question was authorized by Art. 4169, R.C.S., authorizing the guardian of the estate of a minor to receive property in payment of debts due the ward, if he believes the interests of his ward will be advanced thereby. We believe it clear that the annuity was a property right in the estate of the decedent and in no proper sense a debt owing to the legatee.

We conclude that the order of the county court in the guardianship proceedings, authorizing and confirming the exchange of the annuity bequeathed to the minor, Dorris Commander, for the shares of stock in Fakes & Company, was void on its face, because of lack of any statutory authority therefor; in other words, because it was in excess of the powers delegated by the statutes. Nor was it vitalized by the order of the District Court in the certiorari proceedings.

It is our further conclusion that the order of the county court in approving the final account of John B. Laneri, administrator, with the will annexed, of the estate of Mrs. Nannie Graves Laneri, deceased, with express confirmation and approval of the exchange of the capital stock in Fakes & Company for the annuity bequeathed to Dorris Commander by the will of Mrs. Laneri, was void on its face; first, because of the nullity of the order of the same court in the guardianship proceedings, granting leave to the guardian to make the exchange; second, because the exchange was in violation of Rev.Civ.St. Art. 3433, quoted above, requiring provisions and directions of a will, after its probate, to be specifically executed unless annulled or suspended by a suit instituted for that purpose.

Many other authorities cited by appellees have been duly considered, and without reviewing them at length, we feel it sufficient to say that we do not construe them to be in conflict with the authorities cited above and on which our foregoing conclusions are based.

Accordingly, the judgment of the trial court is reversed and the cause is remanded.